FILED
MARCH 6, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 1346

JUDGE GUZMAN
MAGISTRATE JUDGE KEYS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA CASE,<br>on behalf of plaintiff and the classes<br>described herein,<br><br>        Plaintiff,<br><br>   vs.<br><br>MRC RECEIVABLES CORPORATION,<br>and DATA SEARCH N.Y., INC.<br>   d/b/a TRAK AMERICA, LLC<br>   and TRAK AMERICA,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

      1.    Plaintiff Sandra Case brings this action to secure redress from unlawful credit and collection practices engaged in by defendants MRC Receivables Corporation ("MRC") and Data Search N.Y., Inc. d/b/a Trak America, LLC and Trak America ("Trak America"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

### VENUE AND JURISDICTION

      2.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

1

3.	Venue and personal jurisdiction in this District are proper because:

   a.	Defendants' collection communications were received by plaintiff within this District;

   b.	Defendants do or transact business within this District.

## PARTIES

4.	Plaintiff Sandra Case is an individual who resides in the Northern District of Illinois.

5.	Defendant MRC is a corporation with offices at 8875 Aero Drive, San Diego, CA 92123. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

6.	Defendant MRC is engaged in the business of purchasing alleged charged-off consumer debts and attempting to collect them from the consumers.

7.	On information and belief, defendant MRC pays an average of less than ten cents on the dollar for the debts it purchases.

8.	According to the SEC filings of its public parent, Encore Capital Group, MRC and its affiliates "acquire[] its receivable portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2006, original p. 3). By "deep discount" is meant 3.0 to 3.36% of face value. (*Id.*, original p. 28).

9.	Defendant MRC has been the plaintiff in more than 1000 collection lawsuits in the Illinois courts.

10. Defendant MRC uses the mails and interstate wire communications to collect debts.

11. Defendant MRC is a debt collector as defined in the FDCPA.

12. Defendant Data Search N.Y., Inc. d/b/a Trak America, LLC or Trak America ("Trak America") is a New York corporation. Its principal place of business is located at 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791.

13. Trak America describes its business activities on its web site (www.trakamerica.com) as follows:

> Welcome to the proven nationwide legal process that has recovered millions of dollars thought to be unrecoverable for the country's largest creditors and debt buyers.
>
> Step 1: Our FASTRAK predictive model determines with unparalleled accuracy exactly which accounts are worth pursuing.
>
> Step 2: Secure, streamlined and automated processes transmit suit worthy accounts to the right attorney quickly and efficiently.
>
> Step 3: The TRAKAmerica legal network—the best in the business—obtains your legally enforceable judgments.
>
> Step 4: Our in-house skip tracing experts facilitate execution on your judgments by identifying hard-to-find assets and collecting the money owed to you.
>
> Result: **Maximum net back for TRAKAmerica clients.**
>
>> "TRAKAmerica recovered more than $27 million last quarter on warehouse paper we thought was uncollectible."
>>
>> — Publicly traded US credit card issuer

14. The same web site further states:

TRAKAmerica is a rapidly growing legal network management company founded in 2000. With its unique approach, the company has been able to recover millions

of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's success is built on a nationwide network of local attorneys combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's unique advantage is the FASTRAK predictive model built on empirical data from more than one million claims and nearly $100 million in court costs in all fifty states. Combining FASTRAK with vigorous attorney management maximizes net back for TRAKAmerica's clients.

15.     The same web site further states:

Disciplined Attorney Management

To keep our attorneys as productive as possible TRAKAmerica takes a hands-on approach. With over 125 firms nationwide in our network, TRAKAmerica treats legal management as a high volume production operation. We follow a streamlined management process to get your accounts into the courts faster.

From our database of more than a million claims we know exactly what to expect in terms of suit and judgment rates, and we manage our attorneys to these expectations. Overall performance is managed at the batch level and reviewed weekly. Work assignments are reviewed frequently and business shifts are made based on performance.

Because FASTRAK indicates which accounts to sue, we only forward productive accounts to our attorneys, with the cut-off calibrated by client to achieve individual client IRR and net back goals. As a result, our attorneys don't waste their time and your money on unproductive cases.

16.     The same web site further states:

Step 2: Getting To Court Quickly and Efficiently

Once we've run your portfolio through our model and reviewed the net back projections, our TRAKAmerica team designs a complete recovery plan based on your requirements.

First, we prepare your portfolio for our attorney network by identifying suit worthy accounts and skip tracing them for accuracy (addresses, names etc.). As we verify information, we also attempt to collect from these accounts on your behalf.

As a legal network, we can use legal talk off language in these conversations, which often means debtors agree to a payment plan rather than face the legal process.

This immediately creates cash flow for you and also helps fund court costs on accounts that ultimately will go through the legal process.

Step 3: The TRAKAmerica Legal Network

On day 31, we electronically disburse your files to our network attorneys. They load your files into their systems and instantly send demand letters.

After the 30-day validation period expires, our attorneys sue those individuals who have not responded to their demand letters. Results are electronically posted and delivered to our offices each week.

It's an entirely transparent system for full accountability. Each week, our management team examines exception reports that reflect which accounts are still outstanding. The report includes:

- legal suit dates
- service dates
- court information
- judgment information (principle [sic] and interest)
- court costs
- attorney fees

Our clients have the option of connecting electronically to our reporting system so they can check on the status of their portfolio at any time.

Our collection firms also follow our no-fail data security measures, including firewall intrusion detection software, encryption, and stringent internal security control systems.

Step 4: Collecting and Disbursing Your Money

At this stage, our TRAKAmerica team has obtained judgments on your bad debt accounts. We dedicate our efforts and resources—including in-house skip tracing and asset location programs—to collecting the money owed to you.

5

>Skip and asset information is promptly supplied to our attorneys so they can devote their time to collecting from bank accounts, garnishing paychecks, and placing liens on properties.
>
>We are no longer requesting money from debtors—we are actively taking it. . . .

17. The mails and interstate wire communications are used to conduct the business of Trak America.

18. Trak America is a debt collector as defined in the FDCPA.

19. Defendant MRC is one of the companies that use the services of Trak America, described above.

### FACTS RELATING TO SANDRA CASE

20. On or about December 8, 2007, a lawsuit entitled "MRC Receivables Corporation v. Sandra Case" was filed in the Circuit Court of Cook County, Illinois, case no. 07 M1 222465, for the purpose of collecting a purported debt incurred for personal, family or household purposes.

21. Attached to the complaint was an affidavit executed by an unidentifiable person and notarized by one Janet A. Taylor (Exhibit A).

22. Exhibit A is a form affidavit regularly filed in collection actions brought in Illinois.

23. Janet A. Taylor was an employee of Trak America when Exhibit A was executed.

24. Neither the affiant nor Taylor was an employee of MRC.

25. Employees of Trak America regularly executed affidavits similar to

6

Exhibit A as "agent" of various owners of debts.

26. Exhibit A does not disclose the fact that the signatory is an employee of Trak America.

27. By describing the affiant as an "employee/agent" of the putative debt owner, without identification of the company for which the affiant works, Exhibit A conceals the identity of the business preparing the document, Trak America, and appears to come from MRC.

28. The affiant does not have "knowledge of the account balance," as claimed.

29. The affiant does not have access to "the original books and records of" MRC, as claimed.

30. The affiant has no knowledge whether the claim is "for funds advanced to defendants(s) or paid to another at defendant(s) request, or for goods or services provided to defendant(s) or to another at defendant's request".

31. The affiant has no knowledge of whether there are "setoffs or counterclaims available to defendant(s)."

32. The mails and interstate wire communications are used to send affidavits in the form represented by Exhibit A.

### VIOLATIONS COMPLAINED OF

33. The FDCPA, 15 U.S.C. §1692e, states:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

        **(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . .**

34.    Exhibit A does not disclose the fact that the signatory is an employee of Trak America.

35.    By describing the affiant as an "employee/agent" of MRC, without identification of the company for which the affiant works, Exhibit A conceals the identity of the business preparing the document, Trak America, and amounts to the use by Trak America of a business, company, or organization name ("MRC") other than the true name of the debt collector's business, company, or organization.

36.    The false statements in the affidavit also violate 15 U.S.C. §1692e.

37.    By filing Exhibit A in its lawsuit, MRC participated in the fraudulent practices and violated 15 U.S.C. §1692e.

## CLASS ALLEGATIONS

38.    Plaintiff brings this action on behalf of two classes, A and B, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

39.    Class A consists of (a) all individuals (b) against whom legal proceedings were filed (b) in which was filed (c) on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, (d) an affidavit in the form of Exhibit A (e) where the affiant was employed by Trak America.

40.    Class B consists of (a) all individuals (b) against whom legal proceedings were filed, (b) by MRC (c) in which was filed (d) on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, (d) an affidavit executed

by a person who is an employee of a company other than MRC, (e) stating that the affiant is an "employee" and/or "agent" of MRC, (f) which did not in its text identify the company employing the affiant.

41. Each class is so numerous that joinder of all members is not practicable.

42. On information and belief, there are at least 40 individuals against whom legal proceedings were filed, in which was filed on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, an affidavit in the form of <u>Exhibit A</u>, where the affiant was employed by Trak America.

43. On information and belief, there are at least 40 individuals against whom legal proceedings were filed, by MRC, in which was filed on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, an affidavit executed by a person who is an employee of a company other than MRC, stating that the affiant is an "employee" and/or "agent" of MRC, which did not in its text identify the company employing the affiant.

44. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

45. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

46. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

47. A class action is superior for the fair and efficient adjudication of this

matter, in that:

      a.      Individual actions are not economically feasible.

      b.      The entire objective of the debt collection practice at issue is concealment and deception, so that the victims are unlikely to recognize the violation;

      c.      Members of the class are likely to be unaware of their rights;

      d.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

      (1)      Statutory damages;

      (2)      Attorney's fees, litigation expenses and costs of suit;

      (3)      Such other and further relief as the Court deems proper.


                      s/Daniel A. Edelman
                      Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

## **NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\21088\Pleading\Complaint -- DAE_Pleading.wpd